Dennis E. Kadian, Esq.
THOMAS KADIAN LLC
90 East Halsey Road, Suite 390
Parsippany, New Jersey 07054
(973) 996-4300 – Telephone
(973) 996-4310 – Facsimile
dkadian@thomaskadian.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>MCCLAIN & CO., INC.,<br><br>Defendant. | Civil Action No.   1:24-cv-9188<br><br>**COMPLAINT** |

Plaintiffs Zurich American Insurance Company of Illinois and Zurich American Insurance Company (collectively "Zurich") against defendant McClain & Co., Inc. state as follows:

### THE PARTIES

1. Zurich American Insurance Company of Illinois ("ZAICI") is an Illinois corporation engaged in the insurance business with a statutory home office and principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196. Zurich American Insurance Company of Illinois is authorized to transact business and has transacted business in the State of New Jersey.

2. Zurich American Insurance Company ("ZAIC") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center,

150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  It is authorized to transact business and has transacted business in the State of New Jersey.

3. McClain & Co., Inc. ("Defendant") a corporation organized under the laws of the State of Virginia with a principal place of business at 19152 Germanna Highway, Culpeper, Virginia 22701.  Defendant is authorized to transact business and currently transacts business in the State of New Jersey.

## JURISDICTIONAL ALLEGATIONS

4. The amount in controversy between the parties is in excess of $75,000.00.

5. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

6. Venue is proper in this judicial district because a substantial part of the events giving rise to the claims herein occurred in New Jersey and Defendant transacts business in New Jersey.

## FACTUAL BACKGROUND

*2022 WC Policy*

7. ZAICI issued a policy of workers' compensation insurance under Policy No. WC 0161817-06 for the effective dates of November 15, 2022 to November 15, 2023 ("2022 WC Policy") to Defendant.

8. The 2022 WC Policy is an insurance contract which provides insurance for certain liabilities of Defendant as set forth in the 2022 WC Policy.

9. The initial premiums for the 2022 WC Policy were $439,022.

10. Defendant paid the initial premiums for the 2022 WC Policy.

11. ZAICI fulfilled its contractual obligations to Defendant and provided the coverage afforded by the 2022 WC Policy.

12. Pursuant to the terms of the 2022 WC Policy, initial premiums are based on information submitted by Defendant regarding its estimated exposure (i.e., payroll, sales, etc.) for the effective dates of coverage.

13. Since initial premiums are based on estimated information, the 2022 WC Policy is subject to a post-expiration audit based on actual exposure during the effective dates of coverage. The audit can result in additional or return premiums.

14. The audit of the 2022 WC Policy produced an additional premium in the amount of $224,685 owed by Defendant to ZAICI.

15. ZAICI issued invoices and/or demands to Defendant for payment for the 2022 WC Policy premium in a timely fashion.

16. Defendant failed to remit payment of the additional premiums for the 2022 WC Policy.

17. Defendant is liable for statutory interest on the unpaid premium which, as of September 13, 2024, totals $3,823.61 for the 2022 WC Policy.

18. ZAICI provided Defendant with multiple opportunities to dispute the total amount due for the 2022 WC Policy.

19. Defendant did not dispute the outstanding amount due and owing for the 2022 WC Policy.

20. Defendant remains indebted to ZAICI in the amount of $228,508.61 for the 2022 WC Policy.

*2023 WC Policy*

21. ZAICI issued a policy of workers' compensation insurance under Policy No. WC 0161817-07 for the effective dates of November 15, 2023 to November 15, 2024 ("2023 WC Policy") to Defendant.

22. The 2023 WC Policy is an insurance contract which provides insurance for certain liabilities of Defendant as set forth in the 2023 WC Policy.

23. The initial premiums for the 2023 WC Policy were $440,779.34.

24. Defendant paid the initial premiums for the 2023 WC Policy.

25. ZAICI fulfilled its contractual obligations to Defendant and provided the coverage afforded by the 2023 WC Policy.

26. Pursuant to the terms of the 2023 WC Policy, initial premiums are based on information submitted by Defendant regarding its estimated exposure (i.e., payroll, sales, etc.) for the effective dates of coverage.

27. Since initial premiums are based on estimated information, the 2023 WC Policy is subject to a post-expiration audit based on actual exposure during the effective dates of coverage. The audit can result in additional or return premiums.

28. If Defendant is noncompliant with the audit of the 2023 WC Policy, ZAICI may apply an audit noncompliance charge of up to two times the initial premium.

29. Defendant's conduct, including its refusal to remit the audit premiums for the 2022 WC Policy, is a definite and clear indication that Defendant will not comply with the audit of the 2023 WC Policy and/or will refuse to remit payment of the audit premiums for the 2023 WC Policy.

30. Defendant's repudiation of the audit terms of the 2023 WC Policy is a material breach of the 2023 WC Policy.

31. Defendant's repudiation of the audit terms of the 2023 WC Policy has damaged ZAICI in the amount of $881,558.68.

*2022 GLO Policy*

32. ZAIC issued a policy of general liability insurance under Policy No. GLO 01618185-06 for the effective dates of November 15, 2022 to November 15, 2023 ("2022 GLO Policy") to Defendant.

33. The 2022 GLO Policy is an insurance contract which provides insurance for certain liabilities of Defendant as set forth in the 2022 GLO Policy.

34. The initial premiums for the 2022 GLO Policy were $291,941.73.

35. Defendant paid the initial premiums for the 2022 GLO Policy.

36. ZAIC fulfilled its contractual obligations to Defendant and provided the coverage afforded by the 2022 GLO Policy.

37. Pursuant to the terms of the 2022 GLO Policy, initial premiums are based on information submitted by Defendant regarding its estimated exposure (i.e., payroll, sales, etc.) for the effective dates of coverage.

38. Since initial premiums are based on estimated information, the 2022 GLO Policy is subject to a post-expiration audit based on actual exposure during the effective dates of coverage. The audit can result in additional or return premiums.

39. The audit of the 2022 GLO Policy produced an additional premium in the amount of $80,984.26 owed by Defendant to ZAIC.

40. ZAIC issued invoices and/or demands to Defendant for payment for the 2022 GLO Policy premium in a timely fashion.

41. Defendant failed to remit payment of the additional premiums for the 2022 GLO Policy.

42. Defendant is liable for statutory interest on the unpaid premium which, as of September 13, 2024, totals $1,378.16 for the 2022 GLO Policy.

43. ZAIC provided Defendant with multiple opportunities to dispute the total amount due for the 2022 GLO Policy.

44. Defendant has not disputed the outstanding amount due and owing for the 2022 GLO Policy.

45. Defendant remains indebted to ZAIC in the amount of $82,362.42 for the 2022 GLO Policy.

*2023 GLO Policy*

46. ZAIC issued a policy of general liability insurance under Policy No. GLO 01618185-07 for the effective dates of November 15, 2023 to November 15, 2024 ("2023 GLO Policy") to Defendant.

47. The 2023 GLO Policy is an insurance contract which provides insurance for certain liabilities of Defendant as set forth in the 2023 GLO Policy.

48. The initial premiums for the 2023 GLO Policy were $291,454.00.

49. Defendant paid the initial premiums for the 2023 GLO Policy.

50. ZAIC fulfilled its contractual obligations to Defendant and provided the coverage afforded by the 2023 GLO Policy.

51. Pursuant to the terms of the 2023 GLO Policy, initial premiums are based on information submitted by Defendant regarding its estimated exposure (i.e., payroll, sales, etc.) for the effective dates of coverage.

52. Since initial premiums are based on estimated information, the 2023 GLO Policy is subject to a post-expiration audit based on actual exposure during the effective dates of coverage. The audit can result in additional or return premiums.

53. If Defendant is noncompliant with the audit of the 2023 GLO Policy, ZAIC may apply an audit noncompliance charge of up to two times the initial premium.

54. Defendant's conduct, including its refusal to remit the audit premiums for the 2022 GLO Policy, is a definite and clear indication that Defendant will not comply with the audit of the 2023 GLO Policy and/or will refuse to remit payment of the audit premiums for the 2023 GLO Policy.

55. Defendant's repudiation of the audit terms of the 2023 GLO Policy is a material breach of the 2023 GLO Policy.

56. Defendant's repudiation of the audit terms of the 2023 GLO Policy has damaged ZAIC in the amount of $582,908.

*2022 BAP Policy*

57. ZAIC issued a policy of business automobile insurance under Policy No. BAP 0161820-06 for the effective dates of November 15, 2022 to November 15, 2023 ("2022 BAP Policy") to Defendant.

58. The 2022 BAP Policy is an insurance contract which provides insurance for certain liabilities of Defendant as set forth in the 2022 BAP Policy.

59. The initial premiums for the 2022 BAP Policy were $754,842.

60. Defendant paid the initial premiums for the 2022 BAP Policy.

61. ZAIC fulfilled its contractual obligations to Defendant and provided the coverage afforded by the 2022 BAP Policy.

62. Pursuant to the terms of the 2022 BAP Policy, initial premiums are based on information submitted by Defendant regarding its estimated exposure (i.e., payroll, sales, etc.) for the effective dates of coverage.

63. Since initial premiums are based on estimated information, the 2022 BAP Policy is subject to a post-expiration audit based on actual exposure during the effective dates of coverage. The audit can result in additional or return premiums.

64. The audit of the 2022 BAP Policy produced an additional premium in the amount of $52,508.41 owed by Defendant to ZAIC.

65. ZAIC issued invoices and/or demands to Defendant for payment for the 2022 BAP Policy premium in a timely fashion.

66. Defendant failed to remit payment of the additional premiums for the 2022 BAP Policy.

67. Defendant is liable for statutory interest on the unpaid premium which, as of September 13, 2024, totals $893.57 for the 2022 BAP Policy.

68. ZAIC provided Defendant with multiple opportunities to dispute the total amount due for the 2022 BAP Policy.

69. Defendant has not disputed the outstanding amount due and owing for the 2022 BAP Policy.

70. Defendant remains indebted to ZAIC in the amount of $53,401.98 for the 2022 BAP Policy.

*2023 BAP Policy*

71.   ZAIC issued a policy of business automobile insurance under Policy No. BAP 0161820-07 for the effective dates of November 15, 2023 to November 15, 2024 ("2023 BAP Policy") to Defendant.

72.   The 2023 BAP Policy is an insurance contract which provides insurance for certain liabilities of Defendant as set forth in the 2023 BAP Policy.

73.   The initial premiums for the 2023 BAP Policy were $843,100.00.

74.   Defendant paid the initial premiums for the 2023 BAP Policy.

75.   ZAIC fulfilled its contractual obligations to Defendant and provided the coverage afforded by the 2023 BAP Policy.

76.   Pursuant to the terms of the 2023 BAP Policy, initial premiums are based on information submitted by Defendant regarding its estimated exposure (i.e., payroll, sales, etc.) for the effective dates of coverage.

77.   Since initial premiums are based on estimated information, the 2023 BAP Policy is subject to a post-expiration audit based on actual exposure during the effective dates of coverage. The audit can result in additional or return premiums.

78.   If Defendant is noncompliant with the audit of the 2023 BAP Policy, ZAIC may apply an audit noncompliance charge of up to two times the initial premium.

79.   Defendant's conduct, including its refusal to remit the audit premiums for the 2022 BAP Policy, is a definite and clear indication that Defendant will not comply with the audit of the 2023 BAP Policy and/or will refuse to remit payment of the audit premiums for the 2023 BAP Policy.

80. Defendant's repudiation of the audit terms of the 2023 BAP Policy is a material breach of the 2023 BAP Policy.

81. Defendant's repudiation of the audit terms of the 2023 BAP Policy has damaged ZAIC in the amount of $1,686,200.

## COUNT ONE
**(Breach of Contract)**

82. Zurich repeats, restates and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

83. The 2022 WC Policy, 2022 GLO Policy, and 2022 BAP Policy (collectively "2022 Policies") are valid, written contracts between Zurich and Defendant.

84. Defendant has failed and refused to remit payment of the premiums due in the amount of $358,177.67 owed to Zurich pursuant to the terms of the 2022 Policies.

85. Zurich has met its contractual obligations to Defendant.

86. Defendant, through its failure and refusal to remit payment, has breached each of the 2022 Policies.

87. As of September 13, 2024, statutory interest in the amount of $6,095.34 has accrued for the outstanding premiums

88. As a result of Defendant's breaches of the 2022 Policies, Zurich has suffered damages in the amount of $364,273.01, plus additional interest, attorney's fees and costs.

**WHEREFORE**, Zurich demands judgment against Defendant in the amount of $364,273.01 for compensatory damages, together with attorney's fees, cost of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWO
### (Account Stated)

89.    Zurich repeats, restates and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

90.    Defendant, being indebted to Zurich upon accounts stated between them, promised to pay Zurich $358,177.67 upon demand.

91.    Defendant did not dispute the statements of account for the premiums.

92.    Zurich has demanded that Defendant remit payment for the amount owed to Zurich on numerous occasions prior to the filing of this litigation. Defendant, however, failed and refused to remit payment.

93.    Defendant's failure and refusal to pay the premium balance which it owes to Zurich has resulted in damages to Zurich in the amount of $364,273.01.

**WHEREFORE**, Zurich demands judgment against Defendant in the amount of $364,273.01 for compensatory damages, together with attorney fees, cost of suit, interest and such further relief as this Court deems just and proper.

## COUNT THREE
### (Anticipatory Breach/Repudiation of Contract)

94.    Zurich repeats, restates and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

95.    Defendant's failure and refusal to remit payment for premiums owed under the 2022 Policies and non-renewals of the 2023 WC Policy, 2023 GLO Policy, and 2023 BAP Policy (collectively "2023 Policies") constitutes a clear intention that Defendant will no longer perform its obligations under the 2023 Policies.

96.    Defendant has unequivocally communicated its intent to breach the 2023 Policies.

97. Defendant should not be entitled to retain and continue to receive the benefits of the 2023 Policies because of Defendant's intentional and anticipatory breaches of the 2023 Policies.

98. Zurich has been damaged by Defendant's anticipatory breach of the 2023 Policies in an amount of at least $3,150,666.68.

**WHEREFORE**, Zurich demands judgment against Defendant in the amount of $3,150,666.68 for compensatory damages, together with pre-judgment and post judgment interest, attorney's fees, discretionary costs and such further relief as this Court deems just and proper.

### COUNT FOUR
### (Unjust Enrichment)

99. Zurich repeats, restates and realleges the allegations of Paragraphs 1 through 6 of this Complaint as if fully set forth herein.

100. Zurich has provided insurance coverage and related services to Defendant for which Defendant has refused to pay.

101. Defendant acknowledged and accepted the insurance coverage and related services provided by Zurich.

102. Defendant retained the benefit of the insurance coverage and related services.

103. It would be unconscionable for Defendant to retain the benefits of insurance coverage and related services without payment to Zurich.

104. Zurich has repeatedly demanded that Defendant remit payment for the insurance coverage and related services provided by Zurich.

105. Defendant has failed, refused, and continues to refuse to pay the balance due and owing to Zurich, thereby resulting in damages to Zurich in the amount of $3,514,939.69.

**WHEREFORE**, Zurich demands judgment against Defendant in the amount of $3,514,939.69 for compensatory damages, together with interest, attorney fees, costs of suit, interest, and such further relief as this Court deems just and proper.

Dated: September 16, 2024          THOMAS KADIAN LLC
                                                 Attorneys for Plaintiffs

                                                 */s/ Dennis E. Kadian*
                                                 By: Dennis E. Kadian, Esq.
                                                 90 East Halsey Road, Suite 390
                                                 Parsippany, New Jersey 07054
                                                 Tel: (973) 996-4300
                                                 dkadian@thomaskadian.com